UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

DANNY ANGEL RODRIGUEZ,
    Movant

                              Case No. 22-cv-22058

vs

UNITED STATES OF AMERICA,
    Resp.



PROSE REPLY IN OPPOSITION TO THE GOVERNMENTS RESPONDENCE FOR THE
RELIEF MOVANT SEEKS PURSUANT TO 28 USC 2255

Comes now Prose Movant replying in opposition to the Governments stock-response. The Movant herein will categorically outline why the governments stock-response is intentionally myopic and a garbling of case facts, applicable law and precedence. See FN'1

Movant realized by reading the governments response that perhaps he was not elaborate enough on the Grounds raised. Below Movant will expound in detail how exactly the government coerced Movant to plead guilty, How the Court abused it's discretion and the many ways counsel was constitutionally ineffective. Prose Movant asks this Honorable Court for flexibility as well leeway to move forward. And for permission for leave on page limitation in the event this filing exceeds Rule limitations.

        Note: Operative words throughout this motion will be "at the time of change of plea".

Ground 1: INEFFECTIVE ASSISTANCE OF COUNSEL:

The Government hangs their proverbial hat on Movants plea colloquy. And for a moment Movant will concur that "at the time of change of plea" that [h]e was somewhat overwhelmed and complacent with the representations and advise provided by counsel, and had absolutely no reason to believe he was being coerced. The Courts hold that what is relevant is the defendants reasonable understanding at the time of his change of plea. Yes uneducated and layman Movant plead guilty and acquiesced to the Court during change of plea colloquy and Factual Proffer as he likewise acquiesced to his maximum penalty being 4800 months of imprisonment- when actually his maximum sentence was 480 months of imprisonment. See DE 184 at 10-15 and Gov. Response DE 11 pg. 4 of 25. I am certain that the court is aware that counsel for defendants universally tell their clients not to speak, to just say "YES/NO Your Honor" and allow them to do the rest: As was the case with Movant. It's important to emphasis that Movant plead guilty to the charges- on the eve of trial, "only" under the sole-advise of counsel, and counsels representation of the consequences related to pleading guilty without a plea agreement. (FN'2) Movant did not concede to anything as the Government states! Their is a mass distinction in how a plea is interpreted. The Government nor the Court were privy to the dozens of emails (preserved for hearing), or recordedBOP calls (preserved for hearing) between Movant and his lead Counsel Ana Davide on the eve of change of plea: Nor was the Government or Court present when Movants and his attorney conferenced right outside the courts chambers on that daunted day. Further, at no time did the Court say anything that challenged counsel's advise

or representations. Otherwise Movant would have cried for clarification to the Court and to counsel. For example,

Counsel was emphatic and certain that Movant would not waive any pretrial or appellate issues. See CR-DE 701.

The Court, at no juncture, during the plea colloquy notify the Movant that by entering into said plea he

was waiving any issue's other then his right for a jury trial. Nothing the Court stated during the plea colloquy

contradicted counsels representation to Movant CR-DE 184. As too, nothing in Factual Proffer CR-DE 166.

### MOVANT WILL POINTOUT CATAGORICALLY THE ERRORS WITHIN THE GOVERNMENTS OPPSITION TO THE RELIEF SOUGHT:

Issue 1- Govn. Response Pg. 9-11, Movant Initial Brief Pg. 14-15;

Counsel was admittingly unequivocal that by rejecting Plea Agreement and entering into an open plea that we would

preserve the right to challenge all pretrial and all appellate issues on review. The matter of an unconditional

or conditional plea or their distinction were never discussed. It was only post-plea when Movant learned that his

plea, by what counsel represented, fell under the conditional plea definition. The waiver issue first arouse in the

District Courts recusal response CR-DE 291 and then later, when the Appellate Court held, on appeal, that Movants

unconditional plea waived Movants ability to challenge recusal and/or suppression arguments, causing the merits

never to be reached on appeal. In Huynh v. King, 95 F3d 1052, 1060 (11thCir. 1996) the Court held that

defendant received ineffective counsel because of his failure to file a suppression motion in a timely manner,

See CR-DE 340. Counsels failure to timely move to recuse a sitting judge who had already once before sua

sponte recused from presiding against client proved highly prejudicial -as Movant was clear to his attorney that he

would NOT plead guilty if guilt required any sort of waiver, with the exception of the right to a jury trial (See FN'6).

Neither the Courts silent plea colloquy or Factual Proffer offer a "Fair Warning" or "Fair Notice" as to what petitioner was

waiving. Therefore the Appellate Courts refusal to hear the merit prejudiced Movant as counsel had a constitutional

obligation to file to recuse the Court where his clients Due Process violations were in legitimate question supported by

precedence and statute. Further the government also attempts to twist Movants words - Movant has not ventured

to say that he did not know that in 1994 Chief Judges issued a district-wide recusal ORDER. What Movant "did not" know

was that the sitting Judge The Honorable Ursula Ungaro was among the recused class of 1994: And had Movant known

and also known, that the Judge who authorized Movants seizure and arrest warrants was also among the 1994 recused

class petitioner would have NEVER-EVER plead guilty under any circumstances (See FN'7). Lastly, the government states

that Movant voluntarily moved to have the Court accept his guilty plea therefore could not have argue he did not know

about recusal matter. This is absurd and nonsensical. The fact that the recusal arouse post-plea that within itself made

FN'1:
Movant drafted and filed this motion without the benefit of the governments filing DE 11. Movant was able to obtain
a copy of the governments objections through his father via Pacer. But was unable to receive the governments attached
exhibits. Those documents are prohibited documents- which is why Movant tried desperately to transfer to FDC Miami where
those documents are acceptable. Anyhow, the government has contacted Movants Unit Team at U.S.P Lee and
also at Movants new place of incarceration but to no-avail. Previous Institution U.S.P Lee has yet to mail the
governments filing to F.C.I Edgefield. With fear of defaulting, waiting for U.S.P Lee to mail parcel, Movant moves
forward and files his reply to the governments objections.

the plea unknowingly. The bigger matter here is, as Movant counsel attested to in sworn affidavit, that Movant would never have plead had any sort of waiver existed. This Circuit is clear, In United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997) the court held that if a Defendant believes he entered into a conditional plea pursuant to Fed R. Crim. P 11(a)(2), but for some reason the Appellant's issues has not been properly preserved, then the plea has not been entered voluntarily and knowingly. In Pierre, the Defendant did not obtain Government consent to enter a conditional plea and the provision of the conditional plea were not reduced to writing as required by Rule 11(a)(1). Id. Thus, the Court held that because the Defendant did not appreciate the consequence of his plea, the judgement must be vacated and remanded the case to enable the Defendant to replead. As In Re Pierre, Movant did not and could not have appreciated the consequences of his plea. Specifically, Movant one-ups defendant Pierre due to counsels ignorance to the law and her admitted blatant misrepresentation of the consequence Movant faced by pleading guilty. See FN'6.

### Issue 2: Govn. Response pg. 2, Movant Initial Brief pg. 15-17;

The government claims that counsels failure to file to suppress Title 3 calls does not amount to ineffective assistance of counsel, because Movant failed to establish that the outcome would have been different. It's evident that the government failed to read and/or understand Issue 2 of Movants initial brief. Movant moves to second his argument outlined in initial brief. Counsel failure to request or obtain pertinent case discovery and failure to investigate is itself ineffectiveness. Imagine, Movant and Counsel spent an entire day addressing T-3 calls before a Magistrate Judge: without the benefit of it's full discovery. Counsel essentially winged it. In fact, the record is clear that moreover counsel didn't even secure all of the T-3 calls the government was alluding to during hearing. Which caused, an on the record, conflict with client and forced Movant to file to the court. For counsel not to have bothered to reviewed or request and/or investigated Title 3 warrant application is the Holly Grail of ineffectiveness. Counsel ineffectiveness failures prevented counsel from being effective and requesting a Franks Hearing: Movant has a Fourth and Fourteenth amendment rights to challenge the truthfulness of statements made in affidavit supporting a warrant. See Frank v. Delaware, 438 U.S 154 (1978). Counsel ineffectiveness is not a valid strategic decision that is immune from an ineffective claim. No-one could determine the outcome of a suppression hearing especially Movant/Counsel/ nor the Court for the government is the only custodian of discovery- and they did much finagling to avoid producing it throughout the case processes. To include that the government intentionally defied the courts order's to provide ALL case discovery. Meanwhile counsel did not protest to the governments circumventions. Movant has a dozen email communications with his attorneys (preserved for hearing) requesting tirelessly all Title 3 discovery: Requesting that they file to suppress Title 3 calls. And within these communications Movant outlined issues that should be raised to

FN'2:
Movant, in part, rejected a plea of 12 years being that plea agreement provided language of waivers and other stipulations Movant was strongly opposed to: Counsel assured Movant that by rejecting the plea he would receive a sentence lesserthen the governments capped plea deal.

suppress T-3 evidence. Movant also has BOP recorded conversation with counsel Hernandez where he directly vows to file to suppress Title 3 calls. Today evidence is clear that he simply lied as he didn't even have discovery to enable him to file a competent motion to suppress. The evidence is clear that Movant was hoodwinked throughout this process.

Issue 3: Govn. Response pg. 11-13, Movant Initial Brief pg. 17-

First the Government assures us that Movant Counsel did a splendid job cross examine witness. That certainly it was a tactical decision not to impeach witness. This is bizarre. Its a lawyers dream to be able to impeach ANY witness. Especially if the witness will be impeached by an attorney under good standing with the Florida Bar. It's not a tactical one not to impeach a critical witness, it's a pure dereliction of duty. And the government is again all wrong- there is a wide distinction between how to impeach versus NOT impeaching. A difference between cross-examination of a witness versus impeaching a witness. Here Counsel simply did not impeach witness. And this was a critical error. Once witness changed his deposition to counsel from the day before the suppression hearing' counsel himself became a material witness against the witness he was cross examining himself. This is lawyering 101. Especially when Movant had other lawyers on-hand at defense table to assume his role. Further the government highlights that there was no prejudice because the Court found that "there was no breach of attorney-client privilege since Movant authorized the disclosure of information to his co-defendant's counsel". This further amplifies the need for counsel to have impeached witness. Because it was due to this very witness that the court used to gather that Movant allowed his (witness) to disclose information. This was certainly not the case and Movants reason to fire him despite having had paid him 90 thousand dollars. Which was not re-emburced. See Cr-DE 48. To boot Movant has preserved email communications from said Attorney Marc Sietles where he admits that he breached attorney client-privilege when he trusted attorney-friend, who happened to be Movants co-defendants attorney, with privilege information. These emails are preserved for hearing. I will add that defense attorneys Hernandez and Davide have also provide sworn affidavits, in real time, attesting to the aforementioned. Lastly, The government writes that lack of consent is meritless because Movant gave consent to search of warehouse anyhow. This is absolutely false and reckless to suggest something that is so not true. And again the government is misspeaking. First of all Movant never gave consent to enter into the warehouse. Email communications and BOP records proved that Mr. Seitles lied that he visited Movant on the day he claimed consent to search was provided. This is supported by the record. Cr-DE 440. Which is moot, because the attorney that supposedly gave consent had no right to do so under the Doctrina of Apparant Authority.

FN'3:
Mr.. Roni Nahmani was sentence to 20 years in federal prison for being a world-wide distributor of tons synthetic marijuana. Mr.. Nahmani also was held responsible for over 10 million dollars in earnings. Ultimately just after his conviction became final Mr. Nahmani sentence was commuted by President Trump.
(a) Counsel also used Ronen Nahmani's case to evidence to Movant that the money laundry count would run-concurrent to conspiracy counts- as Mr. Nahmani's 20 year sentences ran concurrent to each other: Counsel Davide was ineffective for assuring Movant incorrectly that the money laundry counts would run-concurrent, and for waiving money laundry counts under the concurrent sentence pretense, produced a Strickland prejudice.

Issue 4: Govn. Resp. pg.13-16, Movant Brief pg. 18-21;

The government patterned arguments that everything is a conclusory allegation is trite. Filling pages with detached positions cleverly circumventing and misrepresenting Movant's arguments. Movant plead guilty with the clear understanding, "at the time of change of plea", that he would be able to challenge elements within plea. It wasn't until the December 11-12th (DE 226) evidentiary hearings that counsel asked Movant to waive money laundry counts. Despite Movant having prepared a defense that encompassed documentary evidence and witnesses testimony (preserved) Counsel was emphatic about waiving money laundering counts to preserve the courts time. Mrs. Davide assured Movant and his parents that to argue them would be moot being that they would run-concurrent to other counts.(See FN'3 (a)). it turned-out counsels strategy was contrary to law (sentence guidelines manual) and irresponsible. Amounting to a Strickland-prejudice being that ultimately it led to additional jail time. Movant has consulted legal scholars regarding the courts holding in United States v. Jenkins, 58 F.3d 611 (11th Cir. 1995). And the government is simply intentionally or unintentially wrong. The Eleventh Circuit precedence is direct: Holding, that 18 U.S.C 1957 is ambiguous. While Rodriguez and Jenkins case's are different the question of what constitutes a statutory federal crime under 18 U.S.C 1957 is exactly the same. In Re Jenkins, the Court held "that applying the Rule of Lenity, that Court[s] would construe the statute as applying (ONLY) to "transactions which themselves" involve more then $10,000". This is as definite as it gets. The government position is hogwash, a red herring. The Jeckins Court offered no disclaimers as if separate transactions on the same day amount to a single transaction. The simple definition between single and separate is contrary to the governments conveniently wrong interpretation. As it regards Rodriguez, the Jenkins holding is pin-point accurate. Movant does not meet the requirements under 18 U.S.C 1957. Movant Counsel was constitutionally ineffective for:

a) allowing Rodriguez to plead guilty to an offense conduct that was not a statutory federal crime,

b) for moving to waive an established strategic money laundering defense due to their own ignorance of the law-i.e. waiving wrongly the money laundry defense under the wrong pretense that it would run concurrent to other counts,

c) and, for not knowing that this Circuit had already clarified In Re Jenkins that 18 U.S.C 1957' requires "transactions that themselves exceed 10,000 dollars".

*Further, please note that the government response "did not" touch Movants claim under 18 U.S.C 1956. See Opening Brief DE 1 pg. 19, Section (a). i.e. That, at the time of the change of plea, the required concealment element was not a part of Movants plea colloquy or Factual Proffer; See 17-20904 DE 184 and DE 166. This circuit has held that

FN'4:
Counsel said that she was over-whelmed and forgot. Forgetfulness is not a strategic maneuver- and not one immune from ineffectiveness.

FN'5:
The District Court even filed, months prior to sentencing, that she acknowledged that Movant and his Counsel were in serious conflict. @ Criminal Docket i.e. Court Order.

the concealment element must exist for the conviction to be valid. See U.S v. Puentes-Hurtado, 794 F.3d 1278 (11th Cir. 2015); U.S v. Cifuentes-Cuero, 808 F. App'x 771, 775 (11th Cir. 2020). Note: that the concealment element was added to his co-defendants Factual Proffer. This matter also holds a Strickland prejudice. Lastly` while APPELLATE Counsel did make a Factual Proffer challenge on appeal: Counsel failed to investigate and identify critical arguments that would have prevailed on appeal. Appellate Counsel failure to identify' the two aforementioned issue's forced Movant to raise it on his prose appellate appeal related to forfeitures, (Appeal Case No. 20-10563) where the merits were not reached. These convictions also lead to an illegal forfeiture and forfeiture process. Movant asks this court to hold weight on case facts and the precedence cited in Opening Brief Pg's 19-21: Counsel was constitutionally ineffective by all standards.

### Issue 5: Govn. Resp. pg. 16, Movant Brief pg. 21-22:

It was irresponsible for counsel to not have presented mitigating evidence at evidentiary hearings. The hearing challenged the weight of the ADB-Fubinaca. Challenged the purity of ADB-Fubinaca. Challenged the weight of the carrier medium i.e. card stock paper, even challenged the weight assumed within the governments lab reports. Prior to evidentiary hearing a Court approved laboratory provided evidence that impeached the governments own lab results. This evidence proved that two-thirds of the weight the government attributed to ADB-Fubinaca was actually another substance not charged in the indictment. And a substance that was NOT an analogue, and nor was this substance objected to. It is further not known if two-thirds of the substance detected was even a federally prohibited substance. Counsel despite having Movants parent spend several thousand dollars to have this laboratory test the governments evidence [Cr. Doc. 83-84] counsel without explanation or strategy failed to introduce said lab results that clearly impeach the governments own lab results and the governments own weight assessment. See FN'4. Also, importantly, this laboratory conclusively determined that the governments evidence proved that the card-stock paper had mere residue traces of ADB-Fubinaca. This is critical as Movant was held liable for the inert card-stock paper that weighed 18 grams from factory, that was merely used as a carrier medium NOT a cutting agent. Movant also hired two expert witnesses, of which, Counsel neglected to present this objection i.e. evidence to any of the expert witnesses or to the Court so a fair determination could be made. Counsels ignorance and negligence highly prejudiced Movant because it led to additional jail time, as it increased Movants sentencing exposure.

FN'6:
Counsel should've assured that this issue would be properly preserved as represented prior to change of plea. Counsel failure to reduce to writing conditional plea requirements Pursuant to Rule 11 (a)(1) was ineffectiveness. And prejudiced Movant being that Counsel's failures led to merits not being reached on appeal. Being that Movant was represent( that no waivers were attached to change of plea.
Movant notes, that he himself twice told the Court, once before sentence was imposed and another after sentencing was imposed, that he moves to object and preserve all pretrial issue's among them were Recusal and Suppressor Hearing. And th Court accepted without government objection. See Cr-DE 633 and DE 701

Issue's 6 and 10: Govn. Resp. pg. 16-17 and 20-21, Movant Reply pg. 22 and 25-26;

The governments response reads that the problem with Movants argument is that the record conclusively establishes that he unconditionally plea guilty to all counts of the superseding indictment and that nothing in the record of the underlining criminal case allows the conclusion that he intended to condition his plea on the application of those jail credits to his sentence. Movant offers that the same could be said that nothing in the record outlines that Movant waived any appellate rights or post sentencing objections; That nothing in the record outlines that Movant would not receive cooperation credits; That nothing in the record outlines that Rodriguez would not receive said jail credits; That nothing in the record outlines that Rodriguez waived the right to effective counsel; That nothing in the record says that Movant waived recusal of a Judge who presided while never disclosing that she had previously been among the recused class against Rodriguez; That nothing in the record outlines that Movant knew he was totally affirmatively misadvised by counsel; That nothing in the record or plea colloquy warns Movant that he should not believe or consider his attorney's representation of law and consequences counsel incolcated upon Movant prior to change of plea; That nothing in the record outlines that Counts 21-24 were of transaction that themselves exceeded 10,000 dollars; That nothing in the record i.e. Plea colloquy or signed Factual Proffer outlines the required concealment element under count two pursuant to 18 U.S.C 1956; The court and nor did government inform Movant that his counsels affirmative representation were a lie or incorrect; That there is nothing in the record that informs Movant that his plea was conditional or unconditional. And so on. Movant further moves to correct the governments position that his own statements under oath during plea colloquy' translated that he was not induced by any offer, promised or assurance. There is not a defendant in the world that "at the time of change of plea" would know if he is being induce, coerced or even if the plea is uninformed. These are all matters the evolve after the change of plea occurs. For example: The Movant within his 2255 filing presents many arguments attached to the plea being coerced, uninformed and involuntary. These arguments are preface on counsels affirmative representation of law, facts, and expertise (at the time of change of plea). Movant at the time of change of plea had absolutely no-way of knowing that his attorney had a complete misunderstanding of the laws, facts and precedence surrounding his case and consequences e.g. that the good-time jail credits from previous conviction were not legally available. Movant was told by counsel that 18 U.S.C 3585 require Movant to get said jail credits under the plea (See Counsel Affidavit) this representation fell lock-step with the Bureau of Prison's documented assurance regarding said jail credits. Rodriguez had no reason to second guess a seasoned attorney on applicable laws or her understanding of the sentencing guidelines (See FN'8) Another example: Movant, at the time of change of plea, had no-way of knowing that his counsel had not memorialized his cooperation agreement and that he was cooperating without an agreement. Despite counsel assuring Rodriguez that entering into open plea was required to complete their establish cooperation agreement (which turned out not to even exist). Movant had started his cooperation months prior to change of plea. And being counsels representation Movant

continued his cooperation for many months after change of plea. It wasn't until December 2018 that Movant learned that no cooperation agreement existed. These two above examples apply to all Movants arguments. Once Movant in 2018 learned that no cooperation agreement existed, at that juncture, the plea became coerced, uniformed and involuntary. Being that Movant pre-plea was emphatic that he would not plead guilty unless he receives the cooperation credits promised and represented by the case agent/government and attorney. Learning that no cooperation existed was among the many reasons Movant moved to proceed prose Cr. DE 264/340. The government suggest that Movant offers no evidence that the plea was coerced. The Movant offers as evidence 4 counsel affidavits, under the penalty of perjury, that attest to what occurred moments before change of plea. The Movant has documentary evidence (in real-time) and BOP recorded phone calls (in real-time) to support all counsel affidavits and Movants accounts. Further Movant filed numbers motions prior to any sentencing determinations- as well made similar arguments in open court regarding his reasonings to need to move to proceed prose despite paying all is attorney's. Conversely it's the government that does not offer any evidence to refute any of the evidence and arguments that the Movant brings forth. The governments response also claims erroneously, that Court corrected any misadvise made by counsel projections- This again is not true. For the Court to mention what is a possible sentence does not undo, void or invalidate Rodriguez's reasonable understanding of the ACTUAL consequence his attorney represented -not projected. Especially when counsel tells Rodriguez that what the court says during his plea colloguy is merely a formality that he would receive less then the 12 years previously offered in a rejected plea agreement. Otherwise why would Movant (a defendant) plead guilty if there was absolutely no benefit to doing so? Especially when Movant was adamant about going to trial, and can prove a viable defense, among them (See Exhibit 1, attached) Why would Movant (a defendant) bypass his constitutional right to a jury trial and agree to plead guilty to receive what amounts to a death sentence. Similarly why would Movant start cooperating prior to change of plea- and continued debriefing after change of plea: if no cooperation agreement existed? Movant has preserved among other evidence real-time communication on the eve of change of plea where Rodriguez tells Counsel that he will never plead guilty without a cooperation agreement -and counsel responded with an absolute assurance that Movant would receive a Rule 35 reduction. Learning, post plea, that the cooperation agreement was never memorialized derailed Rodriguez faith and trust in his paid legal team. And definitely was among the reasoning that he moved to blindly ask the court to allow him to represent himself, and his reasoning to having filed motions to withdraw plea DE 340.

FN'7:
Magistrate Judge who authorized forfeiture and arrest warrants abused it's discretion. By authorizing an arrest warrant that violated a cause he was directly recused from affecting. Violating indefinite recusal orders and Movants Due Process.

### Issue 7- Government Response pg. 33, Movant Brief pg. 22-23;

Prior to change of plea and prior to the courts change of plea colloquy' counsel represented to Movant that we will

reject the plea offer because we will certainly receive a sentence below the governments capped 12 year plea offer.

At this very moment the Movant was highly prejudiced by his counsel's misrepresentation of the consequences. In

fact, counsel liken a persuading comparison outlining that Ronen Nahmani (Case No. 14-cr-20926) received just a 20

year sentence for tons of synthetic marijuana and 10 million dollars, In the SDFL, By the Honorable Chief Judge Moore'

just months prior. (See FN-2).  Counsel further said that Movants case paled in comparison to Nahmani's. Weeks later

Movant was dragged into an uninformed, coerced and unknowing change of plea. And at the time of rejecting the capped

plea offer the Movant was [not] informed by the court of his maximum sentence being 4,800 months (which was incorrect

anyhow). Therefore the governments argument is moot being that the governments facts and timing are misplaced.

Movant over-all situation doesn't balance over what a judge said or didn't say weeks later at "change of plea" hearing.

And even if Counsels rejection of the governments capped plea offer occurred simultaneously to the courts change of plea

colloquy -the Courts colloquy would not have meliorated the fact that the Movants plea was unknowing, coerced and

uninformed.

### Issue 8- Government Response pg. 18-19, Movant Brief pg. 23-24;

The government claims that counsel decision to seek the 2016 Sentencing Guidelines was a tactical one. And that

Movants claim is again conclusory. Counsel could not have made a tactical decision to seek the 2016 Sentencing

Guidelines over the 2018 guidelines because Counsel was admittingly unaware that the 2018 Guidelines had added

amendments that directly helped Movant. Counsel did not know of the inclusion of USSG 2D1.1(E)(i) and (ii). Counsel

failed to investigate. Therefore Counsel could not have made an informed decision nor a tactical one. And even

assuming for a moment that counsel was fully aware of the binary choice: Counsel would have been ineffective to have

sided with the 2016 Sentencing Guidelines. Because nothing in the 2016 Guidelines benefited Movant. Being that the

Eleventh Circuit had already well determined that the THC 167-1 ratio applied to the all synthetic marijuana's. Counsel

failed to understand and investigate related precedence. On the other hand, the 2018 Sentencing Guidelines added

amendments that directly impacted Movants sentence. Therefore Movant was wholly prejudiced. This also lead to a

Strickland prejudice because it caused additional jail time.

### Issue 9- Government pg.19-29, Movant Initial Brief pg. 24;

Once again the government is patently wrong. The government puts much stock, conveniently when she believes

its serving, on a plea colloquy and Factual Proffer. Both of which doesn't preclude or state that Movant cannot

challenge ADB-Fubinaca as an analogue. Yes Rodriguez knows he plead guilty, despite the oppressive circumstances

surrounding his plea, but (in part) under the representation from counsel that he would STILL be able to challenge

that ADB-Fubinaca was not an analogue to a control substance, in fact, counsel was clear to Movant that we will be able

to challenge everything i.e. using the term "a contested plea".  At that juncture this was important because counsel

even assured that her expert said that ADB- was not an analogue to a control substance. Nothing in the Plea colloquy or

Factual Proffer contradicted counsels representation by saying that by pleading guilty Rodriguez's would waive his ability

to make such a challenge. Movant had no reason to believe counsel was uniformed about the consequences of the change

of plea. The government is further wrong that the record does not side with Movants argument. First of all, in open

court, Counsel Mrs. Davide told the Court, in the presence of the government, that this would be a contested plea:

That we intended to challenge everything. Later in that same post-plea hearing when counsel informed the Court that

we would be challenging that ADB-Fubinaca was not an analogue to a controlled substance and had retained an expert in

support. The government stated [paraphrasing] that "they were flabbergasted that counsel intended to challenge conduct

Rodriguez had plead guilty to". DE 211 at 39-44 @ Crim.Doc. Well guess what, Movant also was flabbergasted that he

could not challenge that ADB-Fubinaca was not an analogue to a control substance. And equally flabbergasted that

Counsel would have assured Movant of a right that was not feasible and/or available. Counsel's stated

position in court is a testament to her thought process and to what she really thought viable. And obvious that that is

what she relayed to Movant at the time of change of plea. Movant has preserved all related email communications

attesting to counsel's representation and intent. It was counsels strategy to plea guilty and make a later challenges to

mitigate the extent of guilt and culpability. As further evidence Movants family even hire counsels expert to testify on

Rodriguez behalf that ADB-Fubinaca was not an analogue under the Analogue Act. Counsel also has provided Movant with a

sworn affidavit regarding this matter. Movant was prejudiced because he would not have plea guilty- if his ability to make

said challenge did not exist. More-over if counsel's strategy to plead guilty and then challenge the guilt at an upcoming

evidentiary hearing is not lawfully foreseeable or strategically available- then Movant cannot be held liable for counsels

using a strategy that is unfounded and unsound. Conversely, since defendants are often held to their attorneys strategic

decisions a defendant cannot be held accountable for their attorneys uniformed and nonexistent strategic decision.

This is being ineffective 101.

Ground 2: THE DISTRICT COURT ABUSED IT'S DISCRETION-

Issue's- Government Response pg. 21-22, Movant Initial Brief pg 29-30:

The Movant raised issue's that the Court abused it's discretion, in part, by not holding mandatory hearings:

1) Movant filed (Doc. 456) i.e. a Recusal Affidavit Pursuant to 28 U.S.C 144. Recusal affidavits Pursuant to

28 U.S.C 144 require that the Court holds a hearing. This Court dismissed or denied without meeting the hearing

requirement. Ignoring or refusing to hold a hearing on these issue is an abuse of discretion.

2) At change of plea hearing the Court advised Movant "that if the sentenced impose[d] was harsher than you

expected, you will still be bound by your guilty plea and you will not be able to withdraw it" (Doc. 184 at 12).

Movant was directed, by the District Court, that he would not be permitted to withdraw his change of plea (after) sentencing, if the sentence was harsher then he expected. The court did not say that Movant could not move to withdraw change of plea if he discovered that counsel had grossly misled him, or otherwise,"prior to sentencing". As documented throughout Rodriguez's case, it's crystal clear that Movant was misled by his lead-counsel's over-all representations. Rodriguez's addressed this before both the Magistrate and District Court (See FN'5). As too Rodriguez filed numerous motions to withdraw unconstitutional plea, "prior to sentencing": See Doc. 264, 301, 311, 340, 431, 440 etc. The District Court abused it's discretion by NOT so much as holding a hearing. The Court breached it's own change of plea hearing agreement . Despite Movant MOTIONS informed the Court that, in support, that HE held and would produce at hearing:

a) In support, sworn affidavits from his attorneys and other witnesses.

b) In support, documentary evidence.

c) In support, email communications between him and his attorneys'.

d) In support, recorded BOP calls between Rodriguez and his attorney's.

e) the Court breached by stating it would not allow Movant to withdraw plea [a]fter sentencing- leaving Movant the option to file to withdraw [p]rior to sentencing.

The Court abused it's discretion because Movant, at that juncture in prose capacity, provided the Court with overwhelming evidence and allegations that a hearing was merited., Evidence that would have proven that the Movants plea was involuntary, unknowing and coerced. Evidence that Movants attorney's were constitutionally ineffective. Rather the Court issued silent denials.

3)- The District Court abused it's discretion by electing to use ghost-weight to accumulate the Movant offence level. In other words the Court used an assumed weight of case substance (ADB-Fubinaca): By calculating packages -not proven to have contained ADB-Fubinaca or any other substance. Packages not even proven to have belonged to Movants or attached to his conspiracy. This was an abuse of the courts discretion. And violated Movants Due Process.

4)- The District Court electing to preside over Movants case was an abuse of discretion. As this Court held an extra judiciary conflict and bias against Rodriguez. This very sentencing Court has twice before elected to recuse against causes attached to Movant due to an extra judiciary conflict. The District Court violated Movants Due Process. And thus the Court abused it's discretion for sitting silently against Movant knowing a conflict existed- the record reflects.

5)- The District Court abused its discretion by using acquitted conduct as a sentencing factor. In 1994 Movant was charged with robbing a life long friend and colloquy of District Court Judge Ursula Ungaro (Cr 94-402). Throughout the entirety of Movants case process and at sentencing the Court alluded to the "Highsmith assaults". The Court showed an ingrained bias against Rodriguez. Evidenced in the draconian sentence Judge Ungaro render against Movant.

6)- The District Court abused it's discretion by accepting a change of plea as to count 2 of superseding indictment without the required concealment element. No evidence or proffer was provided to this court to substantiate the mere inference that Rodriguez satisfied the required concealment prong under 18 U.S.C. 1956. The Movant conduct does not meet the requirements - and the Court had NO factual basis to lawfully accept guilt on Count 2 of indictment.

7)- The district court abused it's discretion by accepting a change of plea as to counts 21-24 of superseding indictment. As the defendants conduct was not a federal crime. Certainly, the Court and Government knew or should've known of the long-standing Circuit precedence defining that 18 U.S.C 1957 requires that the transaction be of transactions that themselves exceed $10,000. See Re In Jenkins. Further movants paid attorney's should have known the requirements under 18 U.S.C 1957: as this Circuits precedence was established over 20 years ago. The case evidence is clear that none of the transaction outlined in Counts 21-24 are of a single transactions that exceeds over $10,000. Therefore the Movant could not plead guilty to an offense that on it's face is not a Federal Crime. Thus the Court abused it's discretion by accepting, said change of plea, without a factual basis or suggestive evidence.

8)- The district Court abused it's discretion by denying defendant the right to present a defense. Movant, in preparation for trial ask the court to issues writ's on defendants witnesses that were incarcerated to prove his innocence. These witnesses proved that Movants involvement was not like the government portrayed. These witness were instrumental to trial defense. Once the Court denied defense witnesses Movant's attorney said that now we have no choice but to plea. Meaning that the district Courts denial ( CR-DE 149,160 & 162) of witness deterred Counsel's. Counsel position was that the Court killed their opportunity to present a defense. What's ironic is that the court told Movant at change of plea hearing that he can present witnesses in his defense... yet a week prior to change of plea denied Movants rights to subpoenaing witnesses in preparation for trial (See CR-DE 184 pg.13). Proving that the Court was prejudicial and it really never meant what she proffered under Rule 11. The Court abused it's discretion. Movant has documentary evidence and witnesses to attest to these facts, to include Movant Counsel herself.

9)- The District Court abused it's discretion by violating Rule 11 hearing requirements. The Court only informed Movant that by pleading guilty he was only waiving his right to a jury trial. Rule 11 requires the Court to explain to a defendant the rights he or she is waiving, or rather signing away. At the time of change of plea the Courts representation was lockstep with Movants counsel representation. As Counsel also informed Movant that he was only waiving his right for a jury trial. (See Cr-DE 701 and DE 184). Yet after change of plea Movant learned that he had waived pre-trial issue's he was told were preserved. Later, to Movant chagrin, on appeal the Eleventh Circuit refused to reach the merits on certain claims raised holding that Movants plea waived his right to appeal them. Movant received NO fair notice or fair warning that he was waiving any other right other then his right to a jury trial. The Court violated it's own proffered plea agreement at change of plea- and violated Rule 11 requirements. The Movant had no way of knowing that the Court and

EXHIBIT 1

# The Dallas Morning News

Q   ☰ SECTIONS                                          SUBSCRIBE   ☁ 71°F

**MORE FROM HOMEPAGE**

Home prices in Dallas and U.S. continue to surge with no end in sight

Long without a supermarket, Far East Dallas will get a grocer thanks to $1.3M deal

Texas launches COVID-19 vaccine appointment scheduler

NEWS › CRIME

# Synthetic marijuana prosecutions get mixed results due to legal complications

Spice can be fatal to users, but manufacturers often stay one step ahead of the law by constantly changing the chemicals' molecular makeup. As a result, charges have been dropped against some dealers while juries have acquitted others.



Synthetic marijuana products like spice and K2 have resulted in mass overdoses across the U.S. But prosecuting manufacturers and distributors has proven more difficult than for cases involving traditional illegal drugs like heroin and cocaine. (DEA)



**Featured**

TODAY'S EPAPER  ›

YOUR CITY'S NEWS  ›

TEXT WITH OUR JOURNALISTS  ›

50+ FREE NEWSLETTERS  ›

CORONAVIRUS UPDATES  ›

TIMELESS IN TEXAS  ›

CURIOUS TEXAS  ›

PUBLIC NOTICES  ›

NEWSPAPER ARCHIVES  ›

PUZZLES AND GAMES  ›

AL DÍA - NOTICIAS EN ESPAÑOL  ›

OBITUARIES  ›

By Kevin Krause
5:42 PM on Dec 25, 2020 CST

We're loading your content, stay tuned!

Over about four years, federal agents arrested hundreds of people and seized their assets in a major multiphase crackdown on synthetic marijuana products known as K2 and spice that transformed some users into zombie-like states or outright killed them.

But a significant number of those drug trafficking cases have fallen apart, including one of the biggest -- against the owners of the Gas Pipe retail chain in North Texas.

**Home prices in Dallas and U.S. continue to surge with no end in sight**



**Long without a supermarket, Far East Dallas will get a grocer thanks to $1.3M deal**
OPINION



**Texas launches COVID-19 vaccine appointment scheduler**



**Dallas County reports 12 coronavirus deaths, 509 cases; Tarrant County adds 8 deaths**



**As all adults in Texas become eligible for the COVID-19 vaccine, tell us about your experience**



The reason: K2 and spice are "drug analogues" -- close relatives of traditional illegal drugs that give users a high but aren't specifically prohibited under the Controlled Substances Act. Federal prosecutors say they're illegal, but must show in court that a defendant knew the substance they sold was "substantially similar" to a controlled substance in both chemical structure and physiological effect to get a conviction.

A slew of cases were filed from 2012 to 2015 using the Reagan-era drug statute known as the Analogue Act. But defense attorneys nationwide have hired armies of chemistry professors who wrote reports and testified that the chemicals in question were not analogues. In the Gas Pipe case and others, federal juries have voted to acquit on drug trafficking counts.

James Felman, a Tampa, Fla., attorney who helped defend the Gas Pipe and similar cases, said the Gas Pipe was the only spice case he worked on that even made it to trial due to the challenges for prosecutors.

"Almost all of my people got misdemeanors," he said. "In Dallas they just stuck to their guns, and you saw how it ended up."

The biggest factor in defense victories was a U.S. Supreme Court decision (McFadden v. United States) in June 2015 that for the first time required prosecutors to prove defendants knew they were selling illegal substances.

That's not so easy. The Drug Enforcement Administration does not publish a list of banned drug analogues. And experts say there is no scientific consensus backing up government claims. The term, "substantially similar," in the law has no accepted meaning in the field of chemistry or pharmacology, they say.

Even the DEA's own chemists couldn't agree in certain cases, defense lawyers have pointed out. Felman said whether or not a case can be won depends on the experts testifying as well as the nature of the chemicals in question.

"No one should lose those cases if they're properly defended," he said.

The U.S. attorney's office in Dallas declined to discuss the 2015 Supreme Court decision or evidence issues.



The owners of the Gas Pipe went to trial on federal drug trafficking charges that could have landed them in prison for the rest of their lives. Prosecutors said the father and daughter earned millions by selling dangerous synthetic marijuana products like K2 and spice, but they were acquitted of the most serious charges against them. (Shaban Athuman / Staff Photographer)

After the high court's ruling, many convictions were reversed on appeal and sent back to the district courts. In some districts, prosecutors elected to dismiss the drug trafficking charges and proceed to sentencing on the misdemeanor misbranding counts.

Jerry Shults, 74, and Amy Herrig, 45, the Gas Pipe's owners, had been facing life in prison. They were instead sentenced last year to three years behind bars for misbranding their products **after a jury acquitted them** of the more serious drug trafficking counts.

In other cases, defendants withdrew their guilty pleas and obtained more favorable deals from

prosecutors. The legal developments raise questions about how future prosecutions will be handled and whether the government has enough weapons to create a strong enough deterrent. Legal experts say prosecutors will have to be more selective in deciding who to target due to the legal pitfalls that have emerged.

"If I was in their shoes, I would focus more on items that are provable," said Steven L. Kessler, a New York lawyer who worked on the Gas Pipe case and others.

## Kept secret

The DEA has scheduled more synthetic marijuana drugs, meaning more specific chemical substances are publicly listed as illegal under the Controlled Substances Act. But unscrupulous chemists keep tinkering with the molecular structure -- sometimes by altering a single atom -- in order to stay one step ahead of the feds in a constant game of cat and mouse.

That's why the analogue law was enacted: to allow authorities to prosecute offenders for spin-off drugs before the harmful copycats could be officially deemed controlled substances.

But the DEA doesn't share its list of analogue drugs with the public. Defense attorneys and federal public defenders say the analogue law is "unconstitutionally vague" and have called on the DEA to publish its list to give the public fair notice. They have been sharing expert chemistry reports and other evidence with defense teams after achieving success in courtrooms.

A DEA representative in Washington D.C., said the agency had no comment.

Felman said the DEA wants to keep its analogue list secret "so they can prosecute people when they feel like it."

"I think that's really hard to justify," he said.

Felman and other defense attorneys say the DEA also has tried to keep secret an internal dissenting opinion from Arthur Berrier, one of its former experts.

The opinion from Berrier, who was a senior chemist at the DEA's forensic sciences office, came to light in 2012 during a Florida spice prosecution. Berrier found that one particular chemical at issue, UR-144, was not in fact a drug analogue. But the DEA added it to its list of analogue drugs anyway without further discussion, court records say.

Felman and other defense lawyers have used that dissenting opinion to argue that a layperson could not possibly know such chemicals are illegal drug analogues when the DEA's own experts couldn't agree.

Prosecutors say it's ultimately up to a jury to determine if a substance is an analogue.

## Human consumption?

The chemicals for spice and K2 – with such names as XLR-11 -- are typically purchased online from Chinese labs and sprayed onto dry, leafy plant material. Users smoke it to get high, like marijuana. Dosages vary greatly due to the lack of any production standards. They are sold in colorful

packets with catchy names like Scooby Snax that claim to be herbal incense and potpourri -- not for human consumption.

The DEA's Operation Log Jam culminated in July 2012 with the arrest of about 100 people and numerous seizures of drugs, cash and weapons.

Project Synergy followed, with more than 400 arrests made over three phases of the operation that lasted from 2013 to 2015. As much as $95 million in assets were seized during the operations.



A man lays handcuffed and unresponsive as first responders attend to him at a DART rail stop during rush hour in downtown Dallas in 2014. According to police on the scene the man had smoked K2, also known as "spice," a synthetic marijuana known to cause hallucinations and violent behavior.  (LM Otero / AP)

Prior to the government crackdown, most spice products were sold in tobacco shops, gas stations and convenience stores. Usage of the drugs has since dropped considerably. Retail stores that once grossed millions from spice sales have stopped stocking the products due to the crackdown. The drugs are largely peddled now by street dealers, experts say.

Law enforcement officials have shifted their focus to the influx of new dangerous substances like

out in an Austin federal court. They entered guilty pleas several months after the Supreme Court's McFadden ruling in June 2015 and were sentenced to 10 years in prison.

The brothers, ages 53 and 44, alleged that their original lawyers did not inform them of the influential Supreme Court decision, and did not hire any experts or perform even the most rudimentary investigations.

Their lawyers, Felman and John D. Cline of San Francisco, argued that their clients would not have pleaded guilty had they known the DEA's forensic sciences office under Berrier and independent chemists believed they did nothing wrong.

"No legitimate policy considerations could possibly justify prosecuting and imprisoning defendants for conduct that an entire office of the DEA believes is lawful," they said.

Magistrate Judge Andrew W. Austin denied their motion this summer but added that there "is much to criticize" about the DEA's lack of disclosures about its internal disagreement over the legality of certain drugs.

"While these cases may well demonstrate that the government was less than forthcoming with this information, it also shows that there were sources other than the government," the judge wrote in his ruling. "Many other cases also discussed the internal dispute within the DEA."

   

Kevin Krause. Kevin has worked for The Dallas

Morning News since 2003, and he has covered federal criminal courts for the past six years. Kevin has been a journalist for 26 years. Kevin is a multiple recipient of the Stephen Philbin Award for excellence in legal reporting. Kevin earned a BA from Boston University.

✉ kkrause@dallasnews.com   🐦 @KevinRKrause



## Crime in The News

Stay up-to-date with the crime and public safety news your neighbors are talking about.

| Email Address | → |

By signing up you agree to our privacy policy

## Real. Local. Journalism.

Stand with us in our mission to discover and uncover the story of North Texas

BECOME A MEMBER >

---

**THE LATEST**

**Home prices in Dallas and U.S. continue to surge with no end in sight**
BY STEVE BROWN

**Long without a supermarket, Far East Dallas will get a grocer thanks to $1.3M deal**
BY DALLAS MORNING NEWS EDITORIAL   OPINION

**Texas launches COVID-19 vaccine appointment scheduler**
BY ALLIE MORRIS

**Dallas County reports 12 coronavirus deaths, 509 cases; Tarrant County adds 8 deaths**
BY TOM STEELE AND NATALY KEOMOUNGKHOUN

**As all adults in Texas become eligible for the COVID-19 vaccine, tell us about your experience**
BY ALLIE MORRIS

**MOST POPULAR ON DALLASNEWS.COM**

1 **Long without a supermarket, Far East Dallas will get a grocer thanks to $1.3M deal**

2 **Rougned Odor won't make opening day roster, is no longer a Texas Ranger**

3 **Country radio host Justin Frazell accused of sexually assaulting teen girl at holiday party**

4 **Home prices in Dallas and U.S. continue to surge with no end in sight**

5 **Texas rural land sales spike with pandemic**

6 **Texas launches COVID-19 vaccine appointment scheduler**



CERTIFIED MAIL

7021 0950 0002 0996 4361

Danny Rodriguez
-48128-004
United State Federal
Correctional Facility
PO BOX 725
Edgefield S.C.
29824

Federal Prison,
P.O. Box 723
Edgefield, SC 29824

/SPECIAL MAIL: The enclosed letter
ed to you was processed using special
cedures. The letter was neither opened
d. If the writer has a question problem
n this facility has no jurisdiction you may
materials for further information/evaluation,
er encloses correspondence for forwarding
r addressee, please return enclosure to the
ress.

11/05/22

Legal Mail
- New Filing

11/5/22

U.S.M.S.
INSPECTED
BY: