UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22058-CIV-ALTONAGA

**DANNY ANGEL RODRIGUEZ**,

     Movant,

v.

**UNITED STATES OF AMERICA**,

     Respondent.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Movant, Danny Angel Rodriguez's Motion Under 28 U.S.C. [section] 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 1]. The Motion raises 13 claims concerning the trial court and Movant's counsel. (*See generally* Mot.). Respondent filed a Response [ECF No. 11], and Movant filed a Reply [ECF No. 25]. The Undersigned has carefully reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

## I.       BACKGROUND

On June 19, 2018, Movant was indicted on charges of conspiracy to possess with the intent to distribute a controlled substance and a controlled substance analogue, in violation of 21 U.S.C. section 846 (Count 1); conspiracy to commit money laundering, in violation of 18 U.S.C. section 1956(h) (Count 2); possession with the intent to distribute a controlled substance analogue, in violation of 21 U.S.C. section 841(a)(1) (Count 3); possession with the intent to distribute a controlled substance on 17 separate occasions, each in violation of 21 U.S.C. section 841(a)(1) (Counts 4–20); and laundering money on four separate occasions, each in violation of 18 U.S.C.

section 1957 (Counts 21–24).  (*See* Superseding Indictment [CR ECF No. 58] 1–5).[1]

A.     **Offense Conduct**[2]

From October 2016 to February 9, 2018, Movant was a member of a drug trafficking organization ("DTO") operating in the Southern District of Florida.  (*See* Factual Proffer 1). Movant and his coconspirators in the DTO sold ADB-FUBINACA, a synthetic cannabinoid, to federal inmates in detention facilities throughout the United States.  (*See id.*).  Before April 10, 2017, possessing with intent to distribute ADB-FUBINACA, when intended for human consumption, was illegal under 21 U.S.C. sections 813 and 841 because it was an analogue of AB-FUBINACA, a Schedule I controlled substance.  (*See id.* 1 n.1).  On April 10, 2017, ADB-FUNINACA was added to the list of Schedule I controlled substances.  (*See id.*).

Movant and his associates used several mail schemes to introduce ADB-FUBINACA into federal detention facilities.  (*See id.* 1).  One scheme involved mailing inmates what purported to be legal documents; the papers were impregnated with ADB-FUBINACA. (*See id.*).  Another scheme involved mailing inmates photographs and obituaries of purported relatives.  (*See id.* 1–2).  A later scheme involved mailing inmates books from Barnes & Noble impregnated with ADB-FUBINACA.  (*See id.* 2).

Between January 3, 2017, and October 19, 2017, Movant mailed materials impregnated with ADB-FUBINACA to numerous inmates. (*See id.*).  He knew or had reason to know that ADB-FUBINACA was a controlled substance or controlled substance analogue that was intended for human consumption.  (*See id.*).

---

[1] References to docket entries in Movant's criminal case, Case No. 17-20904-CR, are denoted with "CR ECF No."

[2] The facts are derived from the proffer Movant executed in connection with his guilty plea.  (*See* Factual Proffer [CR ECF No. 166]).  At his change of plea hearing, Movant stated that he agreed with "each and every fact contained in the proffer."  (Change of Plea Hr'g Tr. [CR ECF No. 184] 14:16–18).

The inmates who received the materials impregnated with ADB-FUBINACA paid for the substance in various ways, such as money orders, counter cash deposits, and treasury checks drawn from the inmates' commissary accounts.  (*See id.*).  The payments were deposited into one of several business or personal bank accounts belonging to Movant or his associates.  (*See id.*).  The payments were commingled with legitimate bank funds, transferred among various accounts, and then withdrawn and spent.  (*See id.* 2–3).

Movant and his associates conducted or directed the money-laundering transactions involving the proceeds from the sales of ADB-FUBINACA.  (*See id.* 3).  Those transactions included the following transfers of U.S. currency by Movant to the Seminole Hard Rock Hotel and Casino in Hollywood, Florida: (1) $10,982 on July 12, 2017; (2) $11,200 on August 12, 2017; (3) $11,800 on September 20, 2017; and (4) $10,520 on October 8, 2017.  (*See id.*).  The currency Movant transferred was derived in whole or in part from the sale of ADB-FUBINACA.  (*See id.*).

**B.      Change of Plea**

On August 20, 2018, Movant entered a plea of guilty to all 24 counts of the Superseding Indictment without a plea agreement.  (*See* Change of Plea Hr'g Tr. 3:21–25, 14:19–21).[3]  During the plea colloquy, Movant acknowledged he discussed the charges and potential defenses with his attorneys.  (*See id.* 6:21–24).  He expressed satisfaction with the attorneys' representation and advice.  (*See id.* 6:25, 7:1–3).  When asked if he understood that by pleading guilty he was subject to a maximum penalty of 4,800 months in prison, followed by a life-long period of supervised release, he acknowledged understanding the consequences.  (*See id.* 10:17–24, 13:3–8, 15:19–25, 16:1–3).  Movant also conceded "each and every fact contained in the proffer."  (*Id.* 14:16–18).

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.  Citations to hearing transcripts rely on the pagination and line numbering in the original document.

### C.      Sentencing

Prior to sentencing, Movant submitted several objections to the Pre-Sentence Investigation Report ("PSR") related to recommended enhancements, the equivalent substance used to calculate ADB-FUBINACA, and the quantity of the drug attributed to him. (*See generally* PSR Objections [CR ECF No. 200]). A two-day evidentiary hearing was held on Movant's objections. (*See generally* Dec. 11, 2018 Evid. Hr'g Tr. [CR ECF No. 245]; Dec. 12, 2018 Evid. Hr'g Tr. [CR ECF No. 246]).

The court sentenced Movant on June 10, 2019. (*See* Mot. 1). He received a sentence of 400 months' imprisonment, consisting of "200 months as to Counts 1 through 20 and terms of 120 months as to Counts 21 through 24, all to be served concurrently, plus 200 months as to Count 2[.]" (J. [CR ECF No. 471] 4 (alteration added)). The Court further ordered a three-year supervised release term. (*See id.* 6).

Now, Movant raises four grounds for relief from his sentence: that he received ineffective assistance of counsel on ten separate issues (Ground One) (*see* Mot. 13–27); that the court was prejudicial and abused its discretion in mandating a filing restriction against Movant (Ground Two) (*see id.* 28–30); that Respondent coerced Movant to plead guilty (Ground Three) (*see id.* 31–32); and that the ten instances of ineffective assistance of counsel cumulatively prejudiced Movant (Ground Four) (*see id.* 33–34).

## II.      LEGAL STANDARDS

### A.      Section 2255

The grounds for collateral attack on final judgments under section 2255 are "extremely limited." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1300 (N.D. Fla. 2008). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the

Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F. 3d 1190, 1194 n.8 (11th Cir. 2011).

### B.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (alterations added). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687–88; *see also Harrington*, 562 U.S. at 104. To establish deficient performance, the movant must show that, considering all the circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and

facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the movant makes an insufficient showing on one of the prongs. *See id.* at 697; *see also Cox v. McNeil,* 638 F.3d 1356, 1362 (11th Cir. 2011) (citation omitted) ("Because a petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim, a court need not address both *Strickland* prongs if the petitioner fails to satisfy either of them.").

### III.    DISCUSSION

The Court begins by reviewing procedural issues with Grounds Two and Three before turning to the merits of Grounds One and Four.

### A.    Timeliness

Respondent concedes, and the Court confirms, that the Motion was timely filed. (*See* Resp. 6).

**B.      Procedural Bar/Default**[4]

***Ground Two is procedurally barred.***

Respondent asserts that the claim in Ground Two was decided on direct appeal, and Movant is therefore procedurally barred from relitigating it in the present Motion.  (*See* Resp. 21–22).  Movant does not dispute that Ground Two was decided on direct appeal, nor does he raise an intervening change of law in his Motion or Reply.  (*See generally* Mot.; Reply).  For the following reasons, the Court agrees with Respondent and dismisses Ground Two as procedurally barred.

It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate that he already raised and that the appellate court rejected in his direct appeal.  *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.")).  Moreover, "where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a [section] 2255 proceeding."  *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012) (alteration added; citation omitted).

Movant litigated the claim in Ground Two — alleging prejudice as a result of a court order prohibiting the parties from filing additional motions — on direct appeal.  *See United States v. Rodriguez*, No. 19-12451, 2021 WL 3745337, at *8 (11th Cir. Aug. 25, 2021) ("[T]he district court did not commit [] plain error by issuing the order which limited the filing of motions by both parties[.]" (alterations added)).  As there has been no intervening change in controlling law, Movant is procedurally barred from litigating the same claim in the present Motion.  *See Stoufflet*, 757 F.3d at 1239.

---

[4] Respondent only raises procedural defenses to Grounds Two and Three, and so the Court will address the remaining grounds on the merits.

***Ground Three is procedurally defaulted.***

Respondent argues that Movant's claim in Ground Three — that Respondent coerced Movant to plead guilty — is barred by the procedural default rule because he failed to raise it on direct appeal. (*See* Resp. 23). Movant concedes that the claim was not raised. (*See* Mot. 7). He asserts this was because "[a]ppellant counsel failed to do so." (*Id.* (alteration added)). Liberally construed, *see Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008), Movant suggests that counsel's ineffective assistance is the cause for his failure to raise the issue on direct appeal, and that prejudice is demonstrated by his conviction and sentence. Movant also asserts, albeit in other sections of his Motion, that he is actually innocent. (*See* Mot. 21, 24).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a [section] 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (alteration added; citation and quotation marks omitted). Procedural default may be excused if one of two exceptions applies: "(1) cause and actual prejudice, [or] (2) actual innocence." *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013) (alteration added; citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Movant bears the burden of proving that either one of these exceptions would excuse a procedural default. *See Gordon v. Nagle*, 2 F.3d 385, 388 n.4 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice[.]" (alteration added; citation omitted)); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (alteration added; quotation marks and citation omitted)).

***Cause and Actual Prejudice***

For ineffective assistance of counsel to satisfy the cause exception to a procedural bar, "the

claim of ineffective assistance must have merit." *Nyhuis*, 211 F.3d at 1344 (citation omitted). "To determine whether it does, [the Court] must decide whether the arguments [Movant] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." *Id.* (alterations added; citation omitted).

Here, Movant's assertion of ineffective assistance is without merit. First, as Respondent correctly notes, Movant's representations to the trial court belie his claim of coercion. (*See* Resp. 23). At the change-of-plea colloquy, the court asked Movant if anyone had threatened him or coerced him in any way to plead guilty, to which he answered 'no." (*See* Change of Plea Hr'g Tr. 9:21–24). There is a "'strong presumption' that statements made by a defendant during his plea colloquy are true." *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (quoting *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)). "[T]herefore, when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *Id.* (alteration added; citation and quotation marks omitted). Movant fails to meet this burden.

In Ground Three, Movant asserts Respondent coerced him by "threaten[ing] to prosecute [a third party, Movant's father] in order to induce [Movant] to plead guilty." (Mot. 32 (alterations added)). Yet, Movant concedes that "threatening prosecution of a third party family member is not itself legally wrong[.]" (*Id.* (citing *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979)) (alteration added)). Rather, it is the threat of prosecution, where probable cause is absent, that is unlawful. *See Nuckols*, 606 F.2d at 569. Movant merely contends — with no evidence — that Respondent's threat of prosecuting Movant's father was without probable cause. (*See* Mot. 32). This bald assertion fails to demonstrate that the prosecutor did not in fact have probable cause to indict Movant's father. *See, e.g.*, *Bradford v. Mitchem*, No. 1:12-cv-3726, 2014 WL 838790, at

*19 (N.D. Ala. Mar. 4, 2014) ("[P]etitioner has not shown, by his mere contention that the prosecutor did not have sufficient evidence to prosecute his family members[.]" (alterations added)); *see also Martin v. Kemp*, 760 F.2d 1244, 1248 (11th Cir. 1985) ("[T]he guilty plea merely imposes upon the defendant a heavy burden to establish that the government did not observe a high standard of good faith based upon probable cause to believe that the third party had committed a crime." (alteration added; citation and quotation marks omitted)).

Movant was a member of a drug trafficking organization.  (*See* Factual Proffer 1).  At his plea colloquy, Movant agreed that he "and his co-conspirators sold ABD-FUBINACA to inmates." (*Id.*).  He further agreed that proceeds from the sales were deposited into one of several business or personal accounts belonging to Movant, his co-defendant, and other members of the DTO, and "[t]hese money laundering transactions were conducted by or directed by [Movant] and other members of the DTO in concert."  (*Id.* 2–3 (alterations added)).  Movant's representations to the court establish that he was far from a lone actor.

Movant has not shown, by his mere contention, that the prosecutor lacked probable cause to indict his father.  In sum, the arguments that Movant states his counsel failed to raise were not "significant enough to have affected the outcome of his appeal," and the Court finds no merit in his claim of ineffective assistance.  *Nyhuis*, 211 F.3d at 1344 (citation omitted).  In sum, Movant has not met his burden of proving cause and actual prejudice to excuse his procedural default.

### *Actual Innocence*

A court may consider excusing a procedural bar where the refusal to do so "would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned."  *San Martin v. McNeil*, 633 F.3d 1257, 1267–68 (11th Cir. 2011) (citation and quotation marks omitted).  "To establish actual innocence, [the movant] must

demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (alteration added; citation and quotation marks omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* (alteration added; quotation marks and citation omitted). "This is a narrow exception." *Fordham*, 706 F.3d at 1350 (citation omitted). For the innocence exception to apply, a movant "must show that he is factually innocent of the conduct or underlying crime that serves as the predicate for the [challenged conviction]." *McKay*, 657 F.3d at 1199 (alteration added; emphasis omitted).

Movant suggests that he is entitled to the actual innocence exception, but he raises only legal arguments in support. (*See* Mot. 32). He claims that his plea was coerced, but he does not provide new reliable evidence of innocence. *See id.*; *Arthur*, 452 F.3d at 1245. Aside from his own self-serving assertions of innocence, Movant fails to show that he did not commit the acts described in the offense conduct to which he admitted when pleading guilty. *See Medlock*, 12 F.3d at 187 ("There is a strong presumption that the statements made during the [plea] colloquy are true." (alteration added; citation omitted)). As such, Movant has not met his burden of proving actual innocence to excuse his procedural default.

### C.    Ground One: Issues One through Ten

The Court next turns to the merits of Movant's claims. In Appendix A of his Motion, Movant raises ten "issues." (Mot. 13–27). The Court addresses each "issue" as a separate ground for relief.

#### *Issue One*

This ground stems from the Eleventh Circuit's opinion affirming the district court's denial of Movant's recusal and suppression motions. *See United States v. Rodriguez*, No. 19-12451, 2021 WL 3745337, at *3 (11th Cir. Aug. 25, 2021) (holding that Rodriguez waived the right to appeal

the district court's denial of his motions to recuse and motion to suppress evidence when he entered a voluntary and unconditional guilty plea). Movant states that his trial counsel was ineffective for "wrongly assuring and advising [him] that entering into a plea of guilt would not waive his ability to appeal any issue[.]" (Mot. 14 (alterations added)). He therefore asserts that his guilty plea was not knowingly and voluntarily entered. (*See id.* 15).

>    ***Movant's guilty plea was knowing and voluntary.***

Movant cites *United States v. Pierre*, 120 F.3d 1153, 1156 (11th Cir. 1997), in support of his claim. (*See* Mot. 14). That case is inapposite. In *Pierre*, the court held that the defendant's unconditional guilty plea was not knowingly and voluntarily entered. *See Pierre*, 120 F.3d at 1156. The court looked to the plea colloquy which unequivocally indicated that the defendant intended to plead guilty on the condition that — and only after having been mistakenly assured by the district court judge — he had preserved for appeal the denial of his pretrial motion to dismiss. (*See id.*).

Here, the plea colloquy does not support Movant's claim. At no point in the colloquy did Movant or his counsel indicate that his guilty plea was conditional. (*See generally* Change of Plea Hr'g Tr.). Moreover, unlike *Pierre*, the district court did not misadvise Movant. Rather, he was informed as follows:

>    THE COURT: And do you also understand that you and the government will have the right to appeal any sentence that I impose to a higher court?
>
>    THE DEFENDANT: Yes, your Honor.

(*Id.* 12:15–18). At no point was Movant told that his plea was conditional or that he had preserved the denial of his suppression or recusal motions for appeal. (*See generally id.*).

Movant's plea was knowing and voluntary. The court conducted a thorough Rule 11 colloquy, ensuring that Movant entered his guilty plea free from coercion, that he understood the

nature of the charges, and that he understood the consequences of his plea.  (*See generally id.*); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." (citation omitted)).

   **Counsel was not ineffective.**

   Movant further argues that his counsel was ineffective for failing to understand the need to file a motion to recuse the trial judge prior to Movant entering a guilty plea.  (*See* Mot. 15).  In asserting that the claim fails under *Strickland*, Respondent points to the trial court's order denying recusal and the Eleventh Circuit's rejection of Movant's arguments.  (*See* Resp. 10–11).  The Court agrees with Respondent.

   In its denial of Movant's recusal motion, the trial court stated, "[t]he recusal order is not a perpetual blanket order; it does not apply to any and all causes involving this Defendant for all time.  Therefore, there is no standing applicable recusal order to be enforced."  (Order Den. Def.'s Mot. for Recusal [CR ECF No. 291] 4 (alteration added)).  In its affirmance, the Eleventh Circuit concluded "the plain wording of the 1994 recusal order which Rodriguez seeks to enforce demonstrates that the order applied only to the proceeding for which it was issued." *United States v. Rodriguez*, No. 19-12451, 2021 WL 3745337, at *3 (11th Cir. Aug. 25, 2021).

   The *Strickland* test applies to challenges to guilty pleas, as well as to convictions following trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  To find prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (alteration added).  As the trial and appellate courts explained, Movant's recusal argument is meritless.  *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue

plainly cannot prejudice a client." (alteration added; footnote call number omitted; citing *Strickland*, 466 U.S. at 692–93)).  It makes no difference whether counsel filed the recusal motion before or after Movant's guilty plea.  As such, Movant fails the prejudice prong of *Strickland*, and Issue One is due to be denied.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." (alterations added)).

    ***Issue Two***

    Movant argues that counsel was ineffective for failing to request a *Franks*[5] hearing to challenge the veracity of the statements made in an affidavit supporting a wiretap warrant.  (*See* Mot. 16).  He asserts that these "knowingly false" statements "were the entirety of the Government's evidence" without which "there existed no probable cause."  (*Id.*).  Respondent counters that Movant's assertions are conclusory, and "[n]othing in the instant motion supports the conclusion that a motion to suppress the wiretap calls would have been successful if submitted." (Resp. 11 (alteration added)).

    Counsel has no absolute duty to investigate particular facts or, for that matter, a certain line of defense; nor is counsel required to present every nonfrivolous defense.  *See Chandler*, 218 F.3d at 1317–18 (citations omitted).  While Movant asserts that a motion to suppress would have been successful, his speculative and conclusory statement is insufficient to show prejudice.  *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir.1992) (stating conclusory allegations of ineffective assistance of counsel are insufficient to state a constitutional claim).  Because Movant has not

---

[5] *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (holding that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request).

satisfied his burden on either the performance or prejudice prongs of *Strickland*, Issue Two is due to be denied.

### Issue Three

Movant asserts that counsel was ineffective for "[f]ailing to impeach a key witness[6] whose testimony changed from the statements he provided counsel just the day prior to [the] hearing, where he admitted to having breached attorney-client privilege." (Mot. 17 (alterations added)). According to Movant, his counsel should have stopped the cross examination of the key witness because counsel had then become a material witness. (*See id.* 18). Movant additionally argues that the third-party consent given to search a storage unit was invalid. (*See id.* 17–18).

Movant's counsel extensively cross-examined prior attorney, Marc Seitles, about the content and scope of the alleged breach of attorney-client privilege and confronted him with his alleged statement to counsel the day before. (*See* Mot. to Suppress Hr'g Tr. [CR ECF No. 158] 33:8–34:8). Movant's counsel made strenuous arguments in an effort to suppress the evidence in question prior to Movant's guilty plea. (*See generally* Mem. of Law in Support of Mot. to Suppress [CR ECF No. 109]); Objections to Magistrate [Judge]'s Sealed R. & R. Denying Def.'s Mot. to Suppress [CR ECF No. 128]). Movant's assertions of deficient performance are thus not supported by the record.

Movant also fails to establish prejudice. Following an evidentiary hearing, the magistrate

---

[6] Movant does not name the key witness but cites to "Doc. 658, Attorney Affidavits." (Mot. 17). That document contains an affidavit from Movant's counsel, Ramon A. Hernandez. (*See* Attorney Affidavits [CR ECF No. 658] 16–17). The affiant states that a motion to suppress was filed "based on an alleged breach of attorney client privilege by . . . Marc Seitles. The allegation was that Mr. Seitles revealed the existence of a warehouse containing drugs to Sabrina Puglisi, counsel for Mr. Rodriguez's Co-Defendant . . . , and that Ms. Puglisi then caused Ms. Mendez to turn the warehouse into authorities." (*Id.* (alterations added)). Respondent confirms that the key witness is "presumptively attorney Marc Seitles." (Resp. 11).

judge[7] concluded there was no breach of attorney-client privilege because Movant authorized the disclosure of the information to his co-defendant's counsel. (*See* Mot. to Suppress Hr'g Tr. 115:14–116:14; *see also* R. & R. 13). The magistrate judge also found that "the totality of the circumstances demonstrates that the defendant's consent to the search of the warehouse was voluntary." (R. & R. 15 (under seal)). Because Movant has not satisfied his burden on either the performance or prejudice prongs of *Strickland*, Issue Three is due to be denied.

### *Issue Four*

Movant asserts that counsel was ineffective for coercing him to plead guilty to the money laundering counts "where the evidence is clear that [his] conduct did not satisfy the statutory elements[.]" (Mot. 18 (alterations added)). He also asserts ineffective assistance in trial and appellate counsels' failure to investigate and realize that Movant is actually innocent. (*See id.* 21). He additionally asserts that counsel was ineffective for "waiving money laundering objections" and claiming that the money laundering counts did not expose Movant to a higher sentence when, in fact, he received a consecutive sentence on those counts. (*Id.* 19–20).

As discussed, Movant is not actually innocent. Movant agreed that he and his associates conducted or directed, in concert, the money-laundering transactions involving the proceeds from the sales of ADB-FUBINACA. (*See* Factual Proffer 3). Courts apply a strong presumption that statements made by a defendant during a change of plea colloquy are true. *See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). Simply put, the evidence of Movant's guilt is overwhelming, and he admitted to the conduct. Movant's claim also

---

[7] A sealed Report and Recommendation was entered on August 2, 2018. (*See* R. & R. [CR ECF No. 114]). Movant entered his plea of guilty on August 20, 2018, prior to the district court's entry of a final order. (*See* [CR ECF No. 167]).

fails because he raises only legal arguments in support.  *See Bousley*, 523 U.S. at 623 ("[A]ctual innocence means factual innocence, not mere legal insufficiency." (alteration added, citation omitted)).

Movant's conduct also satisfies the statutory elements.  The Eleventh Circuit concluded, citing *United States v. Rodriguez*, 751 F. 3d 1244, 1255 (11th Cir. 2014), that "the factual proffer provided sufficient evidence for the district court to reasonably find that Rodriguez was guilty of the charges in the superseding indictment."  *United States v. Rodriguez*, No. 19-12451, 2021 WL 3745337, at *1 (11th Cir. Aug. 25, 2021).  Movant's claim is meritless, and he fails to establish deficient performance or prejudice.  *See Winfield*, 960 F.2d at 974.

Third, Movant's arguments concerning the money laundering objections and consecutive sentence likewise fail.  As Respondent points out, "a single transaction can be made up of an aggregate of transactions made by the same person on a same day."  (Resp. 15 (citations omitted)).  Once again, Movant's claim in meritless, and counsel cannot be ineffective for failing to raise non-meritorious issues.

Finally, although the court opted to run the sentences on the money laundering counts consecutively, Movant fails to show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  Issue Four is due to be denied under the performance and prejudice prongs of *Strickland*.

### *Issue Five*

Movant asserts that counsel was ineffective "for failing to present exculpatory evidence" provided by defense experts to impeach the Government's lab results.  (Mot. 21).  Respondent correctly points out that "Movant fails to explain what the results of the testing revealed and how the results would have acquitted him of the counts charged."  (Resp. 16).

"[C]omplaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and allegations of what a witness would have testified are largely speculative." *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018) (alteration added, citation and quotation marks omitted).  Moreover, in assessing a claim of ineffective assistance of counsel, which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that the court will seldom, if ever, second-guess. *See Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009).  Movant asserts that the defense experts' testimony would have been exculpatory, but his assertion is speculative and conclusory. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim and do not warrant an evidentiary hearing).

Movant fails to show deficient performance in counsel's strategic decisions. *See Rhode*, 582 F.3d at 1284.  He also fails to establish that "the result of the proceedings would have been different" had counsel presented the evidence. *Strickland*, 466 U.S. at 694.

**Issue Six**

Movant asserts that counsel was ineffective for being ignorant of 18 U.S.C. section 3585(b) and concurring with false assurances from the Bureau of Prisons ("BOP") that Movant would be entitled to overserved jail credits from case number 94-402-PROPCT.  (*See* Mot. 22).  He claims he informed counsel that "if he was not entitled to said jail credits that he would not, under any circumstances, plead guilty." (*Id.*).  Respondent states that Movant "unconditionally plead guilty to all the counts of the Superseding Indictment . . . and nothing in the record of the underlying criminal case allows the conclusion that he intended to condition his guilty plea on the application of those credits to his sentence in the instant case." (Resp. 17 (alterations added, citation omitted)).

In support of his argument, Movant cites *Moore v. Bryant*, 348 F.3d 238, 240 (7th Cir. 2003) (holding that counsel's erroneous advice as to the length of the sentence petitioner faced if he was convicted after trial involved deficient performance; and petitioner was prejudiced by advice because it involved a key issue in his decision to plead guilty). In that case, the court confirmed that the movant received erroneous advice from his attorney. *See id.* The movant submitted an affidavit stating that he received the erroneous advice, which was confirmed by his attorney. *See id.* Here, Movant cites to his attorney's affidavit. (*See* Mot. 22). In the affidavit, Movant's counsel attests as follows:

> Prior to Mr. Rodriguez pleading guilty to the Court in an open plea on August 20, 2018, Mr. Rodriguez advised me that he believed he would receive all of the credit for the time he overspent in Case No. 94-CR-00402-JEM-1. Mr. Rodriguez stated to me that he would only accept an open plea to the Court in his case because he had been told by the Federal Bureau of Prisons that he would receive credit in this case for all the time he overspent on his prior case. I told him to get a written document from BOP stating that and he did.

(*Id.* 39).

The record does not support this claim. Unlike the attorney in *Moore v. Bryant*, Movant's attorney did not provide erroneous advice. Rather, Movant opted to rely on assurances from the BOP. As such, his counsel's conduct did not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Movant's failure to establish deficient performance is fatal to his *Strickland* claim. *See Cox*, 638 F.3d at 1362.

### *Issue Seven*

Movant argues that counsel was ineffective for advising him that by rejecting a 12-year plea offer, he would receive a lesser sentence. (*See* Mot. 22). Respondent points out that "any alleged misadvice made by Movant's counsels in projecting Movant's sentence, if true, was corrected by the Court during the plea colloquy." (Resp. 17–18). Respondent is correct.

During the plea colloquy, Movant was informed by the court that by pleading guilty he was exposing himself to a maximum sentence of 4,800 months in prison. (*See* Change of Plea Hr'g Tr. 13:5–8). Movant agreed, stating he understood "the maximum consequences that could result from [his] entering a plea of guilty to these charges in this case[.]" (*Id.* 11:9–12 (alterations added)). The court proceeded to explain that it would not be able to determine the sentencing guidelines "until after the presentence report has been prepared by the probation office and [Movant] and the government have had the opportunity to challenge the facts reported by the probation office and the application of the guidelines recommended by the probation office." (*Id.* 11:17–24). Movant was further cautioned as follows:

> THE COURT: And do you understand that the sentence ultimately imposed could be different from any estimate that your lawyers or anybody else may have given you, and that if it's harsher than you expect, you will still be bound by your guilty plea and you will not be able to withdraw it?
>
> THE DEFENDANT: Yes, your Honor.

(*Id.* 11:25, 12:1–5). Counsel's mis-advice, if true, was corrected by the Court in the plea colloquy. Thus, Movant fails to show prejudice. *See Strickland*, 466 U.S. at 694.

### *Issue Eight*

Movant argues that counsel was ineffective for failing to request that the 2018 Sentencing Guidelines be applied at the sentencing hearing held on November 27, 2018. (*See* Mot. 23). He asserts that amendments in the new Guidelines "would have substantially lowered [his] sentencing exposure." (*Id.* 23 (alteration added)). Respondent describes Movant's claim as conclusory and the decision as "a tactical one within the discretion of his counsels." (Resp. 18–19).

Movant asserts, without providing support, that use of the new Guidelines would have resulted in a lower sentence. His claim is wholly conclusory, and he fails to show prejudice. *See Wilson*, 962 F.2d at 998. Movant also fails to demonstrate that counsel's tactical decision was "so

patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

### Issue Nine

Movant asserts that counsel was ineffective for assuring him that regardless of his guilty plea, he "would still be able to challenge that ADB-FUBINACA was not an analogue to a controlled substance." (Mot. 24). Movant's allegations are disproven by the record. (*See* Resp. 19).

Movant signed a Factual Proffer wherein he admitted that he "knew or had every reason to know that the substance being sold and introduced into the federal prisons during the course of the conspiracy was a controlled substance or controlled substance analogue intended for human consumption." (Factual Proffer 2). Movant also specified that ADB-FUBINACA was added to the list of Schedule I controlled substances on April 10, 2017, and that "[p]rior to that date it was illegal to possess with the intent to distribute when intended for human consumption pursuant to Ti[t]le 21 USC Sections 813 and 814 **because it was an analogue of AB-FUBINACA,** a schedule I controlled substance." (*Id.* 1 n.1 (alterations and emphasis added)). During the plea colloquy, Movant swore that he had a full opportunity to review the Factual Proffer with his lawyers, and that he agreed with "each and every fact contained in the proffer." (Change of Plea Hr'g Tr. 14:10–18). In sum, Movant's allegation is refuted by the record, and he fails to show prejudice.

### Issue Ten

Movant asserts that counsel was ineffective for assuring him "that he would receive a sentence reduction for his extensive cooperation." (Mot. 25). As discussed, Movant's plea was knowing and voluntary. Further, Movant knew that he would be bound by this guilty plea even if the sentence imposed was harsher than anticipated. (*See* Change of Plea Hr'g Tr. 11:25, 12:1–5).

Counsel's mis-advice, if true, was corrected by the court in the plea colloquy. Movant therefore fails to show prejudice. *See Strickland*, 466 U.S. at 694.

### D.    Ground Four: Cumulative Error

In Ground Four, Movant argues that the effect of the errors alleged in Issues One through Ten "should be considered collectively to determine prejudice[.]" (Mot. 34 (alteration added)). As indicated, Movant fails to establish error, and Issues One through Ten are due to be denied. As such, there is no cumulative error, and Ground Four is likewise due to be denied.

### E.    Evidentiary Hearing

In a habeas corpus proceeding, the petitioner has the burden to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318–19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record. Indeed, because the Court can "adequately assess [Movant's] claim[s] without further factual development[,]" he is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

### F.    Certificate of Appealability

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (alteration added). The Supreme Court has described the limited circumstances when a certificate of appealability should properly issue after the district court denies a habeas petition:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy [section] 2253(c) is straightforward: The [Movant] must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (alterations added).  Movant does not satisfy this burden, so the Court will not issue a certificate of appealability.

### IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    The Motion Under 28 U.S.C. [Section] 2255 to Vacate, Set Aside, or Correct Sentence **[ECF No. 1]** is **DENIED on all grounds**.

2.    A *certificate of appealability* is **DENIED**.  Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Movant is not entitled to appeal *in forma pauperis*.

3.    A judgment will issue by separate order.

4.    The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 27th day of December, 2022.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    Movant, Danny Angel Rodriguez, *pro se*
counsel of record